Carriers; bills of lading; commercial and Government; authority of Government personnel; delivery requirements; *614 tariff rate credit extensions; estoppel. — Plaintiff, having transported property belonging to the United States, seeks to recover transportation and related charges incurred in connection with such transportation. In November 1972, the Department of Housing and Urban Development (HUD) declared to be "excess Government property” mobile homes previously used by the agency for disaster relief. The Economic Development Administration (EDA) of the Department of Commerce ordered the surplus mobile homes from HUD on behalf of the Devils Lake Sioux Tribe of Fort Totten, North Dakota ("the Tribe”) for use in a mobile home park. EDA would not receive physical possession of the property, but rather, the homes were to be shipped to the Tribe, as consignee. An agent for the Tribe arranged for the plaintiff carrier to transport the mobile homes from the HUD storage area in Pennsylvania to North Dakota. Between May 17 and September 9, 1974, the plaintiff shipped 76 mobile homes under bills of lading, now in issue, describing the shipper as "GSA Kaminski Storage Area” and the consignee as "Devils Lake Sioux Tribe”. The bills of lading provided that transportation costs were to be billed to the consignee; however, in the event the Tribe failed to pay, the Government, as shipper, became responsible for payment. The Transportation Coordinator of the Excessing Branch of the Mobile Homes Operations section of HUD signed the bills of lading in the space provided for "shipper or agent.” With respect to these 76 shipments the plaintiff has not received payment of the tariff charges or related costs. Plaintiff seeks payment from the defendant as shipper under the bills of lading; the defendant denies responsibility and asserts various counterclaims. On September 26, 1979 Trial Judge Judith Ann Yannello filed a recommended opinion finding for the plaintiff in part and against the defendant on its counterclaims. The trial judge rejected the defendant’s contention that the United States was not the designated or intended shipper on the bills of lading in issue. Based upon the duties, responsibilities and actual performance of the Transportation Coordinator the trial judge concluded that he was authorized to execute bills of lading on behalf of, and thereby binding, the Government. The use of a commercial bill of lading by the parties wherein the Tribe *615 was to be billed, in the first instance, for the freight costs, was held not to be contrary to applicable regulations. Moreover, the use of the commercial bill did not preclude Government liability for freight costs when the Tribe failed to pay. Where, as was the case here, the consignor or shipper does not effectuate certain terms relating to the bill of lading, a carrier can seek payment of freight charges from the shipper, even after delivery of the goods to the consignee, when such payment is not otherwise received from the consignee. However, the plaintiff was held to be estopped from seeking payment on bills of lading executed by the defendant after June 13, 1974. By its silence and inaction the plaintiff led the defendant to believe that the consignee (the Tribe) was duly tendering payment of freight charges when, in fact, the Tribe had ceased to do so. The Government was thus denied the opportunity to determine whether it wished to continue shipments on which the Tribe was not paying freight charges. The trial judge rejected the defendant’s attempt to recover civil penalties against the plaintiff based on the provisions of 40 U.S.C. § 489(b) (1970). The defendant attempted to impute to the plaintiff the knowledge that one of its employees had of illegal sales of the mobile homes by the Tribe’s agent and his own sale of three mobile home units. However, the trial judge found that the employee was not acting in the scope of his employment with regard to the illegal sales of Government property. The employee’s position with the plaintiff did not encompass the sale of property by the plaintiff, shipped by the plaintiff, which sale was requested by either the consignor or the consignee and which property was owned by either the consignor or the consignee. The employee’s activity with regard to the sales was the result of his own initiative and for his own purposes. Defendant also alleged that the plaintiff failed to deliver some of the mobile homes in accordance with the bills of lading. (The Tribe’s agent had directed delivery of some units elsewhere than to the Tribe.) Therefore, the defendant argued, the plaintiff was not entitled to recover freight charges incurred in such shipments and, moreover, the defendant was entitled to recover the value of the mobile homes which were improperly delivered. However, in that all deliveries in issue were completed pursuant to *616 instructions of the consignee, the trial judge found there could be no misdelivery for which the plaintiff could be found responsible. The defendant also set forth a counterclaim based on plaintiffs alleged assertion of a false claim, 31 U.S.C. § 231, and alleged attempt to defraud the Government, 28 U.S.C. § 2514(1970). (The plaintiff had stated in its claim that the mobile homes were delivered to the Sioux Indians when in fact some were delivered elsewhere at the direction of the Tribe’s agent.) The trial judge found that the plaintiffs statements in the prosecution of the claim not to be so erroneous as to constitute a misrepresentation or an attempt to defraud the Government. The trial judge also held that the limiting provisions of the Disaster Relief Act of 1974, 42 U.S.C. § 5148 (Supp. V 1975), did not preclude Government liability. On February 8, 1980 the court, by order, adopted the recommended decision as the basis for its judgment in this case. The court concluded and ordered that plaintiff was entitled to recover the tariff and freight charges of shipments of mobile homes under bills of lading signed between May 17 and June 18, 1974, from the United States as the shipper-consignor under such bills. Plaintiff was not otherwise entitled to recover and the defendant was not entitled to recover with respect to its counterclaims. On March 28, 1980 the court, by order, entered judgment for the plaintiff for $42,557.19 and dismissed defendant’s counterclaims and such portions of plaintiffs petition on which it had been found not entitled to recover.